(No. 52590.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. RUTH MIMS, Appellant.

*Opinion filed September 29, 1980.*

Ralph Ruebner, Deputy Defender, and Fe Fernandez, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Marcia B. Orr, Iris E. Sholder and Bruce W. Lester, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE CLARK delivered the opinion of the court:

The defendant, Ruth Mims, was convicted of murder after a jury trial in the Cook County circuit court on July 21, 1977. She was sentenced to 14 to 20 years in the penitentiary. On August 8, 1977, her attorney filed a notice of appeal in the appellate court. A short record also was subsequently filed. The defendant's motion for bail pending appeal was denied October 5, 1977. Nothing else occurred in the matter until the appellate court dismissed the defendant's appeal for want of prosecution on June 28, 1978. Counsel made a motion to withdraw as defendant's attorney on April 24, 1979, which was denied for want of jurisdiction. The State Appellate Defender was thereafter substituted as defendant's attorney of record on July 27, 1979. The appellate defender made a motion to vacate the order dismissing the appeal, which was denied August 27, 1979. The defendant then filed a petition for leave to appeal with this court, which was allowed. 73 Ill. 2d R. 315(a).

The record contains an affidavit by the attorney which

states that he was informed by the defendant's family, subsequent to his filing the notice of appeal, that they could not afford to pay him to represent the defendant on appeal. He further stated he waited for the family to tell him who would proceed with the appeal. The record also contains two letters dated August 2, 1978, from the attorney, one written to the defendant and the other to the clerk of the appellate court. In the letter to the defendant the attorney relayed the fact that her appeal had been dismissed. In the letter to the appellate court clerk, the attorney admitted he received a letter notifying him of the dismissal "in the early part of July, 1978." It was not until May 1979 that the defendant asked an attorney who was teaching a class at Dwight correctional institution what recourse she possessed. That attorney notified the State Appellate Defender's office, which then moved to be substituted as counsel, made the motion to reinstate the appeal, and prosecuted this appeal.

The State contends that it was through the inaction of the defendant, not her attorney, that the appeal was dismissed. We do not agree. The attorney was still the attorney of record on June 28, 1978, when the appellate court dismissed the appeal. It was his responsibility either to move to withdraw as her attorney, or to prosecute the appeal. He did neither. Furthermore, the attorney made no effort to inform the State Appellate Defender's office that the defendant wished to retain that office.

This issue has been addressed before by this court. (*People v. Jacobs* (1975), 61 Ill. 2d 590; *People v. Aliwoli* (1975), 60 Ill. 2d 579; *People v. Baze* (1969), 43 Ill. 2d 298; *People v. Brown* (1968), 39 Ill. 2d 307.) We think the following statement from *People v. Brown* is controlling in this case:

"In keeping with [the] judicial attitude [of providing any defendant who so desires with at least one full appellate review of his conviction],

and in light of the exceptional circumstances surrounding the defendant's representation at the appellate level, principally the strong inference that his lawyer had no intention of prosecuting his appeal, we hold the instant case is not a proper one for application of the general rule that a client is bound by the acts or the failure to act of his lawyer. In so holding, we find it irrelevant whether the attorney was paid for the appeal, since in the event of nonpayment his proper remedy would have been to move to withdraw from the case rather than take no action and thereby forfeit defendant's appeal rights. We further find that the defendant himself at no time knowingly waived his right to appeal." 39 Ill. 2d 307, 311-12.

Accordingly, the defendant should be granted her right to direct appeal from her murder conviction and sentence. In the exercise of our supervisory authority we order that the defendant's appeal to the appellate court be reinstated, and the cause is remanded to that court for further proceedings. Based on our resolution of this issue, we need not reach the question of whether the defendant is constitutionally guaranteed a right to appeal in these circumstances.

*Appeal reinstated;*
*cause remanded.*